GARD v. GOULD.

ATTORNEY AND CLIENT—ACCOUNTING—DISMISSAL.

Suit by woman client against attorney for accounting and other relief is dismissed, where testimony shows that defendant and wife executed mortgage to plaintiff for amount owing to her, and that balance of amount she claims to be owing to her was spent by her.

Appeal from Kalamazoo; Hatch (Blaine W.), J., presiding. Submitted June 4, 1931. (Docket No. 33, Calendar No. 35,689.) Decided October 5, 1931. Rehearing denied January 4, 1932.

Bill by Carrie Mason Gard against George B. Gould and another for an accounting and other relief. Decree for plaintiff. Defendants appeal. Reversed.

*David Anderson,* for plaintiff.

*Stephen H. Wattles (Wm. Barnard,* of counsel), for defendants.

POTTER, J. Plaintiff filed a bill in chancery against George B. Gould and Bessie B. Gould his wife for an accounting, discovery, and cancellation of a real estate mortgage given by defendants to her. From a decree for plaintiff, defendants appeal. Plaintiff, at the time of the death of her first husband, Mason, received a farm in Cooper township, Kalamazoo county. Between the time of the death of her first husband in 1927 and her marriage to her second husband in 1928 she worked as a practical nurse. Defendant George B. Gould was a

lawyer. Plaintiff claimed to have been bitten by a dog, and on October 27th employed defendant George B. Gould to commence suit for her to recover damages therefor. Defendant Gould did so, the case was tried, and judgment recovered and collected with costs. In May, 1928, plaintiff sold her farm for $8,000 and received in cash $1,500, leaving $6,500 due, for which she accepted a land contract. Plaintiff wanted to marry again, and advertised in a matrimonial paper and got into communication with one Gard, whom she hurriedly married. Before doing so, she went to defendant George B. Gould to sell the land contract of $6,500. He advised her the contract was good and not to sell it. She couldn't wait. She sold the land contract for $6,000 and married Gard. The ceremony was performed at defendants' residence. Gard had no property, no money, and no income. As soon as he married plaintiff, Gard was inquisitive about her money. When she sold the land contract she received $6,000. She claimed she gave the $6,000 to Gould, and that she never saw it again and he never accounted for it. It is admitted she loaned him $3,500 on a mortgage, leaving $2,500 to be accounted for. There is a dispute as to the proceeds of a $500 certificate of deposit. There is no doubt but this certificate of deposit was cashed, that Gould indorsed it, he says for identification, and that on the same day by the same bank there was issued to plaintiff a cashier's check for $500, leaving $2,000 to be accounted for. She claims defendant George B. Gould took this $2,000, and she never saw it, but on the day she received the money a safety deposit box was hired in her name in the Kalamazoo National Bank and she received and receipted for the

keys thereto. She alone had access to it. Defendant George B. Gould did not have access to it and she visited this box between the time it was rented and time of the commencement of this suit.

Plaintiff evidently became suspicious of Gard. She had been told he probably was marrying her for her money. When he made inquiries about her money she claimed she had sold the land contract for $6,000, that the money had been paid to defendant George B. Gould, and Gould had not accounted to her for it. Because her husband Gard urged her to complain of the situation, she made a written complaint against defendant George B. Gould, in which she charged him with having taken and refusing to account for this $6,000, and Gard presented these written charges to the president of the Kalamazoo county bar association. Some investigation was had, and one of the members of the grievance committee of the bar association ascertained from the bank that she had visited the safety deposit box therein, though the cards relating thereto had disappeared before the trial. Defendant George B. Gould paid her interest in the sum of $210 on the mortgage given by himself and wife to her. Gard wanted her to give him some money. She refused to give him money. He picked up and left, and she went to defendant George B. Gould and asked him to file a bill for divorce against her husband. Gould refused to do so upon the ground the charges made against him before the Kalamazoo bar association were still pending. He prepared and she signed a retraction in which she withdrew and retracted all the charges she had made. Defendant George B. Gould then filed a bill for divorce for plaintiff against her husband upon the ground of her husband's failure to support her. Though

she testifies Gould was at fault in not prosecuting the divorce case to a decree, the record shows that four days after she filed the bill she sent him a letter requesting he delay action. The trial court held defendants liable in the sum of $6,269.90. Plaintiff was awarded body execution against defendant George B. Gould. The mortgage executed by Gould and wife was directed to be paid and other relief was granted. A motion for a new trial was made and denied. The application for a new trial was based upon statements alleged to have been made by plaintiff, affidavits that plaintiff's reputation for truth and veracity was bad, and other grounds.

During the time plaintiff was married to Gard it is not shown she had any other money except that which she derived from the sale of the land contract, nor is it shown that Gard contributed anything toward her care, support, and maintenance. It is fairly shown by the testimony of disinterested witnesses, corroborated and not denied by plaintiff, that during her acquaintance with and marriage to Gard she paid the rent of an apartment, electric light bills, gas bills, and grocery bills; that she paid for an engagement ring, wedding ring, the marriage expense and pictures and expenses of a wedding trip; that she bought a bed, springs, table, lamp, piano player, refrigerator, gas stove, rugs, and curtains. She bought Gard a suit of clothes and an overcoat, paid his hospital bill and expenses of operation, she gave her adopted daughter money, had pictures of the adopted daughter and her child taken, bought a baby bed, baby carriage, and clothing. When plaintiff first married Gard she evidently wanted to impress him with her wealth. She told him in substance that George B. Gould had robbed

her of $6,000 and her husband urged her to complain to the bar association and she did so. She and Gard then had differences. She then accused him of being a criminal, with having served a prison sentence in the Ohio penitentiary, and referred to him as an ex-convict, all of which charges are shown to be untrue. She wanted a divorce and went back to the defendant George B. Gould and employed him as her attorney in the divorce proceedings instituted by her against Gard. She signed a retraction of all the charges made against defendant George B. Gould to the Kalamazoo bar association, subsequently she instituted this suit, and after it was heard it is fairly shown she admitted the defendant George B. Gould's version of the transactions between herself and him was correct, and that all the defendant owed her was the sum of $3,500 and interest.

We think the testimony fairly shows:

(a) That the $3,500 mortgage was made and executed by defendants Gould to her at her request, she claiming at that time she was going to give them the amount of the mortgage at her death.

(b) That the $500 item charged to Gould was paid to her by the Kalamazoo National Bank and represented by its cashier's check delivered to her.

(c) That the charges against the defendant George B. Gould to the bar association are explainable upon the theory she was trying to impress Gard she had money but could not get it and this was an excuse for not giving money to him which he asked for.

(d) That the $2,000 was deposited by her in the safety deposit box, that she had the keys to the box delivered to her, that she receipted for the keys, that she subsequently visited the box, that the defendant George B. Gould did not have this sum of $2,000

and consequently did not have the burden of accounting for it, but that the expenditure of this money by her is fairly accounted for by the testimony relating to her expenditures.

Decree of the trial court reversed, and bill dismissed, with costs.

BUTZEL, C. J., and WIEST, CLARK, McDONALD, SHARPE, NORTH, and FEAD, JJ., concurred.